# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| ROY D. MORAGA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>DR. ALLEY,<br><br>　　　　　　　　Defendant. | Case No. 3:19-CV-00635-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 59, 67] |

This case involves a civil rights action filed by Plaintiff Roy D. Moraga ("Moraga") against Defendant Dr. Carol Alley ("Dr. Alley" or "Defendant"). Currently pending before the Court is Defendant's motion for summary judgment. (ECF Nos. 59, 61.)[2] In response, Moraga filed a motion entitled, "Motion to Deny Defendant's Motion for Summary Judgment," which the Court construes as an opposition to Defendant's motion. (ECF No. 67). Defendant did not file a reply. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 59), be granted and Moraga's motion to deny Defendant's motion for summary judgment, (ECF No. 67), be denied

## I.  FACTUAL BACKGROUND

Moraga is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Moraga was housed at the Northern Nevada Correctional Center ("NNCC"). This case involves two separate claims based on distinct facts.

///
///
///

---

[1]  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]  ECF No. 61 consists of Moraga's medical records, which were filed under seal.

### A.  Facts Related to January 2019 Infirmary Incident

On January 17, 2019, Moraga was sent the NNCC infirmary because he stated he was experiencing diarrhea and bloody stools. (ECF No. 61-1 at 4 (sealed).) Dr. Alley saw Moraga in the infirmary and had him transferred to the emergency room at Carson Tahoe Hospital ("CTH") for an evaluation. (*Id*. at 5.)  While at CTH, a CT scan was performed on Moraga, which showed one small gallstone. (ECF No. 61-2 at 4 (sealed).) There was no evidence of cholecystitis, hepatitis, pancreatitis, or urinary tract infection. (*Id.*) Moraga returned to NNCC at approximately 4:45 p.m. and reported he was not experiencing any abdominal pain or rectal bleeding at that time. (ECF No. 61-1 at 4 (sealed).) Dr. Alley suggested that Moraga should be admitted to the infirmary, however, he refused. (*Id*.) Moraga then signed a release form, indicating that he refused admission to the infirmary. (ECF No. 59-1.)

Moraga alleges that after he refused to be admitted to the infirmary, Dr. Alley punched him in the stomach. (ECF No. 14 at 3.) After Dr. Alley allegedly punched him, Moraga filed a grievance related to the alleged use of force. (ECF No. 59-2 at 9-10.) No use of force was found. (*Id*. at 1.) Moraga alleges that in retaliation for filing his grievance, Dr. Alley charged Moraga "$300 for an emergency 'man-down,' even though there is not supposed to be any charge for a 'man-down' in a life-threatening situation." (ECF No. 14 at 3-4.)

### B.  Facts Related to July 2019 Transfer to High Desert State Prison

On July 1, 2019, Moraga was transferred to High Desert State Prison ("HDSP") for a GI consultation and colonoscopy. (ECF No. 61-3 at 2-3 (sealed).) In his complaint, Moraga alleged that Dr. Alley had ordered the transfer to HDSP because he was Mexican. (ECF No. 8 at 8.) Thus, Moraga claimed that his transfer to HDSP was discrimination based on his race. However, the medical records submitted by Defendant[3] show that Moraga's transfer was ordered by Dr. Naughton, not Dr. Alley as claimed by Moraga. (ECF No. 61-3 at 2-3 (sealed).)

---

[3]  Moraga has submitted no evidence disputing these medical records.

## II. PROCEDURAL HISTORY

On October 16, 2019, Moraga filed an application to proceed *in forma pauperis* along with a civil rights complaint under 42 U.S.C. § 1983. (ECF Nos. 1, 1-1.) On May 26, 2020, Moraga filed a First Amended Complaint ("FAC") asserting claims related to allegations arising from Dr. Alley's alleged actions in January 2019 as well as the actions related to his transfer to HDSP in July 2019. (ECF No. 8.) On March 15, 2021, the District Court screened the FAC and permitted Moraga to proceed on three claims: (1) a claim for a violation of Moraga's Eighth Amendment right against cruel and unusual punishment based on Dr. Alley's alleged use of excessive force arising for punching Moraga; (2) a claim for a violation of First Amendment retaliation against Dr. Alley for improperly charging Moraga for medical treatment; and (3) a claim for violation of Equal Protective clause against Dr. Alley for allegedly transferring him from NNCC to HDSP. (ECF No. 14.) Defendants filed an answer on October 21, 2021. (ECF No. 25.)

Defendant filed a motion for summary judgment arguing this case should be dismissed because: (1) Moraga's claims are precluded based on his prior settlement of a prior lawsuit filed by Moraga that alleged claims arising from the same facts and circumstances alleged in this case; (2) Moraga cannot produce evidence to support his claims for relief; and (3) Defendant is entitled to qualified immunity. (ECF No. 59.) Moraga opposed the motion, (ECF No. 67), however, Defendant did not file a reply.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where

a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV. DISCUSSION

### A. Res Judicata

Defendant filed a motion for summary judgment arguing this case should be dismissed. Defendant's primary argument for dismissal is based on her claim that Moraga's claims in this case are precluded based upon the doctrine of res judicata. (ECF No. 59 at 5-7.) According to Defendant, Moraga filed a separate, but nearly identical lawsuit, against Dr. Alley that arose from the same facts and circumstances as this case. (*Id.*); *see also* Case No. 3:19-cv-00654-MMD-WGC (hereinafter "*Moraga I*".) The parties settled *Moraga I* and the settlement agreement in that case contained a full release of liability that released all claims arising between the parties. Final judgment was entered in Moraga I on November 6, 2020. (*See* ECF No. 17, Case No. 3:19-cv-00654-MMD-WGC.) Based on this final judgment, Defendant argues Moraga's claim in this case, (hereinafter "*Moraga II*"), are precluded and must be dismissed.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (alterations in the original) (quoting *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979)). This doctrine extends to actions brought under § 1983. *Allen v. McCurry*, 449 U.S. 90, 104 (1980).

Res judicata precludes lawsuits on "any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). For the Court to find that Moraga's claims in this case are barred by

the doctrine, Defendant must demonstrate Moraga's previous suit: (1) involves the same claim or cause of action are alleged in the current suit or if an identity of claims exists between the two; (2) involved the same parties as his later suit; and (3) reached a final judgment on the merits. *See Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1020 (9th Cir. 2019); *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002). The Court will address each element in turn.

### 1. Identity of Claims

The first element is satisfied if either the same claims or causes of action are alleged in the two matters or if it is determined that there is an identity of claims. An "identity of claims exists when two lawsuits arise from the same transactional nucleus of facts." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1078-79 (9th Cir. 2003) (internal citations and quotations omitted.) Thus,

> res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.

*Id.* at 1078. To determine whether an identity of claims between the first and second case, the Court must review the facts and circumstances of each case to determine if they arose out of the same common nucleus of facts.

In *Moraga I*, the Court's screening order summarized the facts underlying the case as follows: On January 17, 2019, Moraga filed an informal grievance against Dr. Alley for hitting him in the stomach. (ECF No. 8 at 3-4, Case No. 3:19-cv-00654-MMD-WGC.) In retaliation for filing the grievance, Dr. Alley charged Moraga $40.00 every month for the same man down. (*Id.* at 4.) Moraga's account statements demonstrate a $40.00 withdrawal every month for the same January 17, 2019, date. (*Id.*) On January 17, 2019, when Dr. Alley saw Moraga, she told Moraga that he was bleeding out of his rectum, that he was dying, and sent him to the emergency room at Carson Tahoe Hospital. (*Id.* at 3-4.) In *Moraga I*, Moraga was permitted to proceed on two claims for relief arising from the

allegations that Dr. Alley allegedly punched Moraga in the stomach and improperly assessed him charges for a man-down in retaliation for filing a grievance. (*Id*. at 6.) Specifically, the District Court permitted Moraga to proceed with: (1) a claim for First Amendment retaliation based on Dr. Alley alleging retaliating against Moraga for filing a grievance for hitting him in the stomach; and (2) a due process property deprivation claim against prison officials for continuing to withdraw money from Moraga's account with Dr. Alley's authorization. (*Id.* at 5.)

By contrast, in this case, the Court's screening order summarized the facts as follows: On January 17, 2019, Dr. Alley sent Moraga to the emergency room where a doctor diagnosed Moraga with gallstones that had to be removed. (ECF No. 14 at 3-4.) Upon Moraga's return to NNCC, Dr. Alley told Moraga that she wanted to "admit [him] into the back" because he was dying. (*Id*.) Moraga refused and told her that if he was dying, he wanted to die with his friends. (*Id*.) Dr. Alley got mad and hit Moraga twice on his stomach. (*Id*.) Moraga filed a grievance over Dr. Alley's conduct. (*Id*.) As a result, Dr. Alley charged Moraga $300 for an emergency "man down," even though there is not supposed to be any charge for a "man-down" in a life-threatening situation. (*Id*.)

Thereafter, in July 2019, Dr. Alley had Moraga transferred from NNCC to HDSP for a medical colonoscopy. (*Id*. at 5-6.) Moraga was housed in administrative segregation for two and a half months, so he signed a medical refusal and was transferred back to NNCC. (*Id*.) In August 2019, Dr. Alley again ordered Moraga transferred to HDSP for a colonoscopy. (*Id*.) These transfers resulted in a total of 32 hours of bus time, which were extremely unpleasant for Moraga because he has bad nerve pains in his feet, and the transportation officer put the chains on too tightly on his feet, causing them to go numb. (*Id*.) The transportation officer also put the belly chain on too tightly, which caused Moraga to suffer from diarrhea and then constipation. (*Id*.) Moraga is Mexican American, and he has observed that white inmates were transported to "Carson, Reno Hospitals" for colonoscopies. (*Id*.)

Both cases arise from the same facts starting with Moraga's July 19, 2019, visit to the NNCC infirmary. In both cases, Moraga claims Dr. Alley hit him in the stomach. In both cases, Moraga claims that Dr. Alley retaliated against him for filing a grievance arising out of the alleged incident in the infirmary. And in both cases, Moraga claims that Moraga was improper charged for fees arising from the events on July 19, 2019.

The only difference between the two cases are the additional facts asserted in *Moraga II* that Dr. Alley alleged transferred him to HDSP for a colonoscopy in July and August 2019 because Moraga is Mexican American. However, it is evident that these facts could have been alleged in *Moraga I*. *See* Fed. R. Civ. Pro. 18 (a party asserting a claim may join as many claims as it has against an opposing party.) These additional facts involve a continuation of factual issues arising from the initial issues between Dr. Alley and Moraga involving Moraga's rectal bleeding and other gastrointestinal issues that later led to his referral for a colonoscopy in July 2019.

In both *Moraga I* and *Moraga II*, Moraga alleged a claim of First Amendment retaliation arising from Moraga filing a grievance related to Dr. Alley's actions in the infirmary. Thus, these two claims are clearly the same. Moreover, the Court finds that the additional two claims alleged in this case—for excessive force and the alleged violation of Moraga's equal protection rights based on discrimination—arise from the same nucleus of facts as alleged in *Moraga I* and these claims could have been brought in that action. Therefore, the first res judicata element is satisfied.

### 2. Parties

Both Dr. Alley and Moraga are the parties to the claims asserted in *Moraga I* and *Moraga II*. Therefore, the Court finds this element is also satisfied.

### 3. Final Judgment

Finally, the Court turns to the question of whether a final judgment was entered in *Moraga I* that would have preclusive effect on the claims alleged in *Moraga II*. With respect to *Moraga I*, on October 20, 2020, Moraga and Dr. Alley participated in an early

mediation conference ordered by the Court. (ECF No. 14, Case No. 3:19-cv-00654-MMD-WGC.) At the conclusion of the mediation, the parties reached a settlement, which was later reduced to a written agreement. (*Id*.; ECF No. 59-5.) After entering the settlement agreement, the parties filed a stipulation to dismiss *Moraga I* with prejudice, which the District Court adopted and entered as an order on November 4, 2020. (ECF Nos. 16, 17, Case No. 3:19-cv-00654-MMD-WGC.)

Under the doctrine of claim preclusion, a final judgment on the merits in a case precludes a successive action. "However, the claim preclusion inquiry is modified in cases where the earlier action was dismissed in accordance with a release or other settlement agreement." *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 687 (9th Cir. 2019) (internal citations and quotations omitted.) "A judgment entered based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimate force from the fact that the parties consented to it." *Id*. This is so because a settlement can limit the scope of the preclusive effect of a dismissal with prejudice by its terms. *Id*.

"Two (or more) parties 'may negotiate a settlement of [a] dispute and ... execute a release of all claims. The release acts as a simple contract between the two private parties[.]'" *Id*. at 690 (quoting *Grimes v. Vitalink Commc'ns Corp*., 17 F.3d 1553, 1557 (3d Cir. 1994)). "But when a court dismisses an action because of a settlement, the settlement and release of claims ... is stamped with the imprimatur of [a] court with jurisdiction over the parties and the subject matter of the lawsuit." *Id*. "The settlement and release become a 'final judgment' and 'not simply a contract entered into by ... private parties....'" *Id*. at 690-91. "The agreement determines the scope of preclusion in [such an] action as a matter of preclusion law, not as a matter of contract." *Id*. at 691 (citing Wright, Federal Practice and Procedure § 4443).

Courts "look to the intent of the settling parties to determine the preclusive effect of a dismissal with prejudice entered in accordance with a settlement agreement, rather

than to general principles of claim preclusion." *Id*. at 689-90 (citing *F.T.C. v. Garvey*, 383 F.3d 891, 898 n. 7 (9th Cir. 2004). "'The best evidence of [the parties'] intent is ... the settlement agreement itself ..., as interpreted according to traditional principles of contract law.'" *Id*. at 690 (alteration original).

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), as amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000). "The construction and enforcement of settlement agreements are governed by principles of local law." *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013) (internal citations and quotations omitted). "That is true, 'even where a federal cause of action is settled or released.'" *Id*.

"Under Nevada law, 'a settlement agreement['s] construction and enforcement are governed by principles of contract law.'" *Id*. (citing *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (2005)). Nevada law, like federal law, holds that when the language of the agreement is unambiguous, the court must not go beyond the agreement to construe it. *In re Amerco Derivative Litigation*, 252 P.3d 681, 693, 127 Nev. 196, 211 (2011) When, however, the parties' intent "is not clearly expressed in the contractual language," the court may also "consider the circumstances surrounding the agreement." *Id*. (citing *Sheehan & Sheehan v. Nelson Malley & Co.*, 117 P.3d 219, 223-24, 121 Nev. 481, 487-88 (2005)). The Nevada Supreme Court has noted that "[t]ypically, '[c]ontractual release terms ... do not apply to future causes of action unless expressly contracted for by the parties.'" *Id*. (quoting *Clark v. Columbia/HCA Info. Servs.*, 25 P.3d 215, 223-24, 117 Nev. 468, 480 (2001)). "A contract is ambiguous when it is subject to more than one reasonable interpretation. Any ambiguity, moreover, should be construed against the drafter." *Anvui, LLC v. G.L. Dragon*, LLC, 163 P.3d 405, 407, 123 Nev. 212 (2007).

Therefore, to determine if this final element of claim preclusion is met, the Court must review the settlement agreement in *Moraga I* to determine if the parties' agreement precludes the claims in *Moraga II*. The Court starts with the "Scope of the Agreement" as

defined by the agreement. This section states that:

> (B) The scope of this Agreement covers ALL events of the disputes herein described, all persons described, and those events of or occurrences complained of in the Complaint in the above-listed matter, the Court's Screening Order, and all subsequent pleadings filed under the instant docket number.
>
> (C) The scope of this Agreement also covers *all claims, known or unknown as of the date of this Settlement Agreement, regardless of the nature of those claims, and any disputes, causes of action, and controversies arising from or related to the above-listed action*, which includes any claims arising from the United States Constitution, the Nevada Constitution, federal and state statutory and administrative law, the Nevada Revised Statues, and common law.
>
> (D) Thus, MORAGA foregoes any legal claims related to the above-listed action, as against all named Defendants and potential Defendants, as they would relate to the allegations in the Complaint.

(ECF No. 59-5 at 3) (emphasis added.)

The next heading entitled, "Agreements," states in pertinent part that:

> The NDOC and MORAGA hereby agree to finally settle *all claims, disputes, and controversies, known or unknown, arising from or relating to the disputes in the above-listed action*, pursuant to the following terms:
>
> …
>
> MORAGA agrees to stipulate to dismiss with prejudice United States District Court ("USDC") case number 3:19-cv-00654-MMD-WGC (the above-listed case) in its entirety, which hereby completely releases and forever discharges the NDOC and its past, present, or future officers, directors, attorneys, employees, divisions, predecessors, and successors in interest, administrators and assigns, Dr. Carol Alley, and all other persons, with whom any of the former have been, are now or may hereafter be affiliated, of and *from any and all liability, known or unknown, relating to* the disputes in the above-entitled action.

(ECF No. 59-5 at 4-5) (emphasis added.)

Based on the Court's review of the agreement, the Court finds that the settlement agreement in *Moraga I* unambiguously released all claims, known and unknown, between Moraga and Dr. Alley, including all claims alleged in this case. For example, in the "Scope of Agreement" section, the agreement clearly and unambiguously states that the agreement was intended to cover, "all claims, known or unknown as of the date of this Settlement Agreement, regardless of the nature of those claims, and any disputes, causes of action, and controversies arising from or related to the above-listed action."

(ECF No. 59-5 at 3.) Moreover, the "Agreements" section underscores this point by stating unequivocally that NDOC and MORAGA agreed, "to finally settle *all* claims, disputes, and controversies, *known or unknown*, arising from *or relating to* the disputes" in *Moraga I*. (*Id*. at 4.-5 (emphasis added.) There is no indication in the agreement that the parties intended to limit the scope of the agreement, the release, or the preclusive effect of their settlement in any way.

Critically, it must also be noted that although Defendants argue that the claims in this case are precluded by the settlement in *Moraga I*, Moraga's opposition does not address or contest these arguments in any way. (*See* ECF No. 67.) Nowhere in the opposition does he assert or claim that the settlement agreement was limited in any way. In fact, Moraga does not address these arguments at all.

Therefore, the Court finds that all three elements of claim preclusion are met and that all claims asserted in this case, including the claim related to the alleged violations of Equal Protection Rights arising from his transfer to HDSP in summer of 2019, are precluded by *Moraga I*. Therefore, Defendant's motion for summary judgment should be granted on all claims alleged in this case.

**B.     Equal Protection Claim**

Even if Moraga's Equal Protection Claim related to his transfer to HDSP was not precluded by *Moraga I* because these facts were not expressly raised in the prior lawsuit, summary judgment should still be granted on this claim. In this instance, Moraga's Equal Protection Claim is premised entirely upon Moraga's claim that he was improperly transferred to HDSP by Dr. Alley due to his race. (*See* ECF No. 14 at 6-7.) However, Defendant has come forward with authenticated and admissible evidence that shows Dr. Alley was *not* responsible for Moraga's transfer to HDSP at all. Specifically, Dr. Alley provided a declaration in this case stating she did not order Moraga's transfer to HDSP. (ECF No. 59-8.) Dr. Alley explains that she did not have the authority to order Moraga's transfer, did not order the transfer, and had no part in the decision for the transfer. (*Id.*) In addition, the authenticated medical records submitted by Defendant establishes that Dr.

Naughton, not Dr. Alley, ordered Moraga's transfer. (ECF No. 61-3 at 2 (sealed).) Based on this evidence, Defendant has met her burden on summary judgment to come forward with admissible evidence that no issues of fact exist as to this claim.

The burden now shifts to Moraga to come forward with admissible evidence to show that there is an issue of fact related to this claim. *Matsushita,* 475 U.S. at 586. However, Moraga failed to meet this burden. His opposition is entirely devoid of any argument or evidence to contradict Defendant's evidence on these points. (ECF No. 67.) In fact, Moraga's opposition does not address this claim at all. Therefore, Moraga failed to satisfy his burden to provide evidence to create an issue of fact on this claim and summary judgment must be entered on Moraga's Equal Protection claim for this additional reason.[4]

## V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendant's motion for summary judgment, (ECF No. 59), be granted, and that Moraga's motion to deny Defendant's motion for summary judgment, (ECF No. 67), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

---

[4] Because the Court finds that Moraga's rights were not violated by Dr. Alley, the Court need not address the other arguments raised by the parties in the motion for summary judgment

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for summary judgment, (ECF No. 59), be **GRANTED;**

**IT IS FURTHER RECOMMENDED** that Moraga's motion to deny Defendant's motion for summary judgment, (ECF No. 67), be **DENIED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendant and **CLOSE** this case.

**DATED**: November 9, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**